IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
IN THE WESTERN DIVISION

| | |
|---|---|
| MARCINO PIGRAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:23-cv-02404-JTF-cgc |
| | ) |
| CITY OF MEMPHIS and | ) |
| ROBERT DEIBEL, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS; DISMISSING CASE WITH PREJUDICE**

Before the Court are two Motions to Dismiss filed on December 11, 2024. First is Defendant Robert Deibel's Motion to Dismiss Plaintiff's Complaint. (ECF No. 39.) Second is Defendant the City of Memphis's ("the City") Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim. (ECF No. 86.) Plaintiff Marcino Pigram filed Responses in opposition to both Motions on December 15, 2024 (ECF Nos. 41 & 42.) For the following reasons, both Defendants' Motions to Dismiss are **GRANTED** and this case is **DISMISSED WITH PREJUDICE**.

### I. BACKGROUND

a. Factual Background

Pigram filed the instant Complaint on July 3, 2023, alleging violations of the United States and Tennessee Constitutions. (ECF No. 1, 1 ¶ 1.) Pigram alleges that on July 11, 2022, he hired individuals to work on the property located at 0 Cornell, Parcel ID 069065 00006 (the "Cornell

1

Property"). Pigram intended to build a parking lot on the Cornell Property and live off the proceeds. (*Id.* at 2 ¶ 9.) However, soon after entering the property, Deibel contacted the City to report that Pigram was criminally trespassing on his land. (*Id.* at 2 ¶ 8, 10.) Pigram alleges that the City did not verify Deibel's claim of ownership of the parcel. Instead, the City disregarded Pigram's documentation that showed his legal ownership, and through actions the Memphis Police Department, removed him and his employees from the property. (*Id.* at 2–3 ¶ 11–14.) He also claims that the City, through the "Environmental Enforcement Office," harassed him and kept him from utilizing the property. (*Id.* at 3 ¶ 17.) He alleges that they informed him that the property was in a hazardous condition or that he had utilized the property in a hazardous way. (*Id.*) Pigram contends that the City made these statements despite knowing that they were false. (*Id.*) He claims he has been unable to use and enjoy his land, given Deibel's criminal trespass allegation and his fear of further police action against him or his employees for being on the Cornell Property. (*Id.* at 3 ¶ 16.) Pigram argues that Deibel pursued a baseless and false prosecution against him that was ultimately "abated." (*Id.* at 4 ¶ 22–23.)

Pigram now brings this 42 U.S.C. §1983 action against the City, alleging that he was the victim of a malicious prosecution, an unreasonable seizure under the Fourth Amendment, an unconstitutional taking under the Fifth Amendment, and a claim under the unconstitutional conditions doctrine. (*Id.* at 1 ¶ 2.) He also sets forth a separate malicious prosecution claim against Deibel. (*Id.*) He seeks $200,000 in compensatory damages and $100,000 in punitive damages. (*Id.* at 5 ¶ 31(A)–(B).)

### b. Procedural Background

It is clear from the Record that the Parties were not diligent in complying with their obligations under the scheduling order. (ECF Nos. 19, 25 & 27.) Thus, the Court scheduled a

pretrial conference and a trial for December 4, 2024 and December 16, 2024, respectively. (ECF No. 28.) However, on November 25, 2024, Deibel filed a Motion to Dismiss for Failure to Follow Orders and Rules, claiming that Pigram had, *inter alia*, failed to diligently make progress in the case, file initial disclosures, make himself available for deposition, or exchange discovery. (*See* ECF No. 31.) The matter was discussed during the December 4, 2024 pre-trial conference where Defense counsel expressed concerns with the case, going so far as to say that he was unsure what the case was about. (ECF No. 36.) It became apparent that the Parties had failed to exchange any meaningful discovery or file any motions. (*Id.*) After listening to the disputes, the Court gave the Parties one last opportunity to file dispositive motions. (*Id.*) As a result, the Defendants filed the instant motions to dismiss, to which the Plaintiff responded.

II.     **LEGAL STANDARD**

A complaint must contain sufficient facts to "state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiffs do not succeed in making a claim plausible by adorning their complaints with facts creating a "sheer possibility that a defendant has acted unlawfully" or facts that are "merely consistent with a defendant's liability." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Id.* at 557). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 663. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* at 678 (citing *Twombly*, 550 U.S. at 557). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* at 663 (citing *Twombly*, 550 U.S. at 555). A plaintiff with no facts and "armed with nothing more than

3

conclusions" cannot "unlock the doors of discovery." *Id.* at 678–79. Thus, it is incumbent upon the Court to first sort through the plaintiff's complaint and separate the real factual allegations, which are accepted as true and contribute to the viability of the plaintiff's claim, from the legal conclusions that are only masquerading as facts and need not be accepted. *See Edison v. State of Tennessee Dept. of Children's Services*, 510 F.3d 631, 634 (6th Cir. 2007). Once the Court has discarded the legal conclusions, the question becomes whether the actual remaining facts state a plausible claim for relief.

When considering whether a complaint meets this standard, the Court must accept all factual allegations in the complaint as true, draw all inferences in the light most favorable to the plaintiff, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018); *see also Ashcroft*, 556 U.S. at 678–79. Moreover, the Court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232 (1974)).

### III.  ANALYSIS

Pigram brings claims against both Defendants under various constitutional theories. The City argues that dismissal is warranted under Rule 12(b)(6) because Pigram failed to plausibly plead any claim under 42 U.S.C. §1983. Deibel seeks dismissal because Pigram failed to make out a prima facie case for malicious prosecution against him. The Court addresses these matters below.

#### a. Deibel's Motion to Dismiss Malicious Prosecution Claim Against Him

Deibel seeks to dismiss the Malicious Prosecution claim against him on the grounds that no criminal prosecution was ever initiated against Pigram with respect to any allegations raised in

4

his complaint. (ECF No. 39, 3.) To make a prima facie case for malicious prosecution in Tennessee, a plaintiff must prove that (1) a prior suit or judicial proceeding was instituted without probable cause, (2) defendant brought such prior action with malice, and (3) the prior action was finally terminated in plaintiff's favor. *See Roberts v. Federal Exp. Corp.*, 842 S.W.2d 246, 247–48 (Tenn. 1992). In reviewing a motion to dismiss, the Court must take all factual allegations as true and view them in the light most favorable to Plaintiff. *Doe*, 903 F.3d at 581. But, even then, a reviewing court is tasked with determining if the allegations in the complaint are plausible and not just mere conclusory statements. *See Ashcroft*, 556 U.S. at 663.

As noted, Pigram claims that Deibel initiated or brought a criminal prosecution against him. However, Pigram's Complaint and Responses fail to show that any such prosecution was ever instituted. (ECF No. 41.) As such, the Court is not inclined to accept as true Pigram's unsupported allegation that a prosecution occurred. Pigram has not demonstrated the existence of any prosecution arising out of the incident in question, and the Court was unable to find any. The Court notes that the instant Motion was filed after Plaintiff had a full the opportunity to conduct discovery and amend the Complaint. Pigram has failed to submit anything to supports his claim. Because Pigram failed to plead any of the elements of his malicious prosecution claim, it must be **DISMISSED**.

### b. The City's Motion to Dismiss

#### 1. § 1983 claims

The City moves to dismiss Pigram's 42 U.S.C. § 1983 claims because he has not clearly alleged the deprivation of a statutory or constitutional right, or stated a cognizable municipal liability claim for the alleged violations. (ECF No. 40-1, 5–9.)

5

A plaintiff can bring a claim under §1983 for deprivation "of any rights, privileges, or immunities secured by the Constitution and laws," as a result "of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983. A municipality may be liable under § 1983 if the plaintiff establishes that: (1) the plaintiff's harm was caused by a constitutional violation, and (2) the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992); *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996). Plaintiff bears the burden of proving that the constitutional rights allegedly violated were clearly established. *Cawood v. Booth*, No. E2007-02537-COA-R3-CV, 2008 WL 4998408, at *11 (Tenn. Ct. App. Nov. 25, 2008) (citing *Dominque v. Telb*, 831 F.2d 673, 676 (6th Cir.1987), *aff'd Dominque v. Telb*, 884 F.2d 579 (6th Cir. 1989)). In doing so, a plaintiff must assert the allegedly violated right in a particularized sense such that "a reasonable officer would understand that what he is doing violates that right." *Cawood*, 2008 WL 4998408, at *11 (citing *Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987)). Thus, in determining whether a plaintiff has met his burden, the court must decide the legal question of whether the facts alleged by the plaintiff show a violation of clearly established law. *Mitchell v. Forsyth*, 472 U.S. 511, 528 n.9 (1985).

Further, with regard to municipal responsibility, the Supreme Court has made clear that municipalities cannot be held liable under *respondeat superior* for an injury inflicted solely by its employees or agents. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978); *see also Morgan v. Fairfield Cnty., Ohio*, 903 F.3d 553, 565 (6th Cir. 2018). That said, municipalities can be held liable for harms caused by their own direct actions, by the implementation of municipal policies or customs or by employees whom the municipality has failed to adequately train. *Morgan*, 903 F.3d at 565. Under the *Monell* analysis, a custom, or course of action, must be "so permanent and well settled as to constitute a custom or usage with the force of law." *Doe*, 103 F. 3d at 507–

08. Generally, official policy refers to formal rules or understandings that establish fixed plans of action to be followed consistently and over time. *Davenport v. Simmons*, 192 F. Supp. 2d 812, 824 (W.D. Tenn. Sept. 13, 2001). In addition, the municipality's custom or policy must also be the "moving force" behind the alleged injuries or losses. *Id.* (quoting *Board of County Com'rs of Bryan Cnty, Okla. v. Brown*, 520 U. S. 397, 404 (1997)). To satisfy the burden of showing a custom or policy, a plaintiff must provide specific facts to support the claim. Conclusory or unsupported factual allegations are insufficient. *Id.*

Returning to the Complaint in this case, Pigram asserts deprivations of his Fourth and Fifth Amendment rights. He supports his Fifth Amendment claim with general allegations that he has been denied the use of his property. He also asserts, through broad allegations, that his Fourth Amendment rights were violated when the police seized him without probable cause. There is nothing in the Complaint to factually support Pigram's assertions, such as an arrest report by the Memphis Police Department or any type of notice from the "Environmental Enforcement Office" to cease and desist his activities because "he had utilized the property in a hazardous way." Apart from his broad, general, and conclusory allegations, the Complaint is devoid of any facts that, if proven true, would establish a violation of a clearly established right. As such, the Court finds that Pigram has failed to carry his burden.

Additionally, Pigram has failed to sufficiently plead the existence of an illegal policy or custom to support his claim for municipal liability. His sweeping and unsupported allegations that the City employed unlawful policies or customs are insufficient. *See Huffer v. Bogen*, 503 F. App'x 455, 462 (6th Cir. 2012) (dismissing a § 1983 claim against a county defendant when the complaint "failed to identify any policy or custom that resulted in a constitutional violation"); *Jackson v. Thomas*, No. M2010–01242–COA–R3CV, 2011 WL 1049804, at * 5 (Tenn. Ct. App. March 23,

7

2011) (affirming dismissal of a complaint against a county because the plaintiff failed to identify a policy or custom that resulted in deprivation of any rights). Once again, Pigram only advances legal conclusions that are insufficient to withstand the Motion to Dismiss.

Based on the foregoing, Pigram's claims brought under § 1983 must be **DISMISSED**. Additionally, since § 1983 is the vehicle through which a private litigant, like Pigram, may seek relief in a civil action for the alleged constitutional violations, the Court's dismissal of his § 1983 claim also entails the dismissal of his Fourth and Fifth Amendment claims, as well as his malicious prosecution claim.

2. *Claim Under the Unconstitutional Conditions Doctrine*

The Taking Clause of the Fifth Amendment of the Constitution bars Governments from taking property of citizens without just compensation. *Dolan v. City of Tigard*, 512 U.S. 374, 383-84 (1994). Implicit in the Taking Clause is the unconstitutional conditions doctrine. *Megladon, Inc. v. Village of Pinecrest*, 66 F. Supp. 3d. 1214, 1218 (S.D. Fla. Mar. 2, 2023). Under this doctrine, the Government may not require a person to give up a constitutional right, such as the right to compensation for the taking of property, in exchange for a benefit conferred by the government where the benefit sought has little or no relationship to the property. *Dolan*, 512 U.S. at 385. The Complaint alleges that Plaintiff and Defendant Deibel dispute ownership of a parcel of land. On one occasion, police officers were called, and Plaintiff was removed from the land that he claims as his own. The Plaintiff argues that this conduct gave rise to his claim under the unconstitutional conditions doctrine as the government prevented him from exercising his constitutional right to use and enjoy his land. (ECF No. 1, 3 ¶¶ 19–20.) Other than making a passing reference to the unconstitutional conditions doctrine, Pigram has failed to provide any factual or legal support for

his claim as there is nothing in the record to support Plaintiff's ownership of the land.[1] At this late stage in the litigation when Plaintiff has had the time and opportunity to conduct discovery, but failed to do so, the Court cannot extend Plaintiff the courtesy of accepting all his factual allegations as true without any sort of evidence in the record as to ownership of the parcel. Without such ownership, Plaintiff has no claim under the Takings Clause and therefore under the unconstitutional conditions doctrine. As such, this claim must also be **DISMISSED**.

### c. Pigram's New Negligence Claims

In his Responses, Pigram contends that the Defendants were negligent. He alleges that Deibel was negligent in knowingly making a false statement or report to law enforcement. (ECF No. 41, 4.) Also, Pigram states that the City's conduct fell below the standard of care because it acted without first researching or performing a reasonable investigation, which led to violation of his rights. (ECF No. 42, 5.) Again, these claims are not stated, or in any way included, in the Complaint [2], and Pigram never sought leave to amend the Complaint to add them. At this late stage in the litigation, it would be unfair to permit him to raise a new claim in response to Defendants' motions. Even if the Court were to permit Pigram to add these claims, they would not rescue his case. This eleventh-hour fifty-nineth minute attempt to add negligence claims are just two more conclusory allegations to add to the heap.

### IV.    CONCLUSION

In conclusion, Pigram's Complaint fails to allege any facts to support his claims against either Defendant. For the reasons described above, the Court finds that the Defendants' Motions

---

[1] Plaintiff should consider filing an action to quiet title in state court.
[2] The Complaint's only reference to negligence is where it alleges that "Defendant City is not immune from its conduct, due to the negligence of its employees. (ECF No. 1, 5 ¶ 30.)

to Dismiss are well taken and should be **GRANTED**. This case is **DISMISSED WITH PREJUDICE**.

    **IT IS SO ORDERED** this 24th day of January, 2025.

                                            *s/John T. Fowlkes, Jr.*
                                            JOHN T. FOWLKES, JR.
                                            UNITED STATES DISTRICT JUDGE